# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | | |
|---|---|---|
| **WASEEM DAKER,** | : | |
| Plaintiff, | : | |
| VS. | : | |
| | : | **CASE NO.: 5:14-CV-138-MTT-CHW** |
| **PATRICK H. HEAD,** *et al.*, | : | |
| Defendants. | : | |

## ORDER

On October 9, 2018, the Eleventh Circuit confirmed that Plaintiff Waseem Daker, an inmate presently housed at the Valdosta State Prison in Valdosta, Georgia, did not have three strikes at the time he filed the Complaint in this case. The Eleventh Circuit accordingly reversed the Court's previous judgment and remanded the case for further proceedings (ECF No. 24). The Eleventh Circuit's mandate issued on November 7, 2018 (ECF No. 26).

Plaintiff has filed the following motions that are presently pending before the Court: (1) two motions to expedite the preliminary screening of this case pursuant to 28 U.S.C. § 1915A (ECF Nos. 25, 31); (2) an emergency motion for preliminary injunction (ECF No. 27); (3) a motion to recuse United States Magistrate Judge Weigle (ECF No. 28); and (4) a motion for preliminary injunction or temporary restraining order (ECF No. 29). For the following reasons, the Court **DENIES** each of these pending motions. In addition, the Court **ORDERS** Plaintiff to (1) file a motion for leave to proceed *in forma pauperis* in this

case; and (2) recast his Complaint in accordance with the instructions below.

I.  **Motion for Recusal**

Plaintiff has filed a motion seeking recusal of Magistrate Judge Weigle (ECF No. 28). This motion is duplicative of a motion filed in Case Number 5:18-cv-00245-TES-CHW. In this motion, Plaintiff contends that Magistrate Judge Weigle should recuse himself because he is "ghost-writing" orders for district judges rather than entering recommendations to which Plaintiff would have an opportunity to object. *See* Mot. Recusal 2-4, Dec. 10, 2018, ECF No. 28. Plaintiff alleges that Magistrate Judge Weigle has "demonstrate[ed] bias, prejudice, hostility, and antagonism" towards Plaintiff in this case and that he has "discriminat[ed] against Plaintiff in comparison with other similarly situated prisoners." *Id.* at 9.

Plaintiff bases his motions on 28 U.S.C. § 455. The statute generally provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The statute also enumerates certain other circumstances requiring a judge to disqualify himself. *Id.* at § 455(b)(1)-(5). Plaintiff's primary complaint is that the Court is biased towards him. Plaintiff may thus be relying on either subsection (a) or subsection (b)(1).

The standard under subsection (a) is objective and requires the Court to ask "whether an objective, disinterested lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain significant doubt about the judge's impartiality." *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003) (internal quotation marks omitted). In the Eleventh Circuit, "it is well settled that the allegation of

2

bias must show that the bias is personal as distinguished from judicial in nature." *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000) (internal quotation marks and citation omitted) (per curiam). As a result, "a judge's rulings in the same or a related case are not a sufficient basis for recusal," except in rare circumstances where the previous proceedings demonstrate pervasive bias and prejudice. *Id.*; *see also Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute [a] valid basis for a bias or partiality recusal motion."); *McWhorter v. City of Birmingham*, 906 F.2d 674, 678 (11th Cir. 1990) ("[The bias] must derive from something other than that which the judge learned by participating in the case."). In this case, Plaintiff has not pointed to any specific facts showing that any sort of extrajudicial bias existed, nor has Plaintiff demonstrated that the Court's rulings exhibit "such a high degree of . . . antagonism as to make fair judgment impossible." *See Liteky*, 510 U.S. at 555. Plaintiff has not demonstrated that Magistrate Judge Weigle has a bias towards Plaintiff "so extreme as to display clear inability to render fair judgment." *See id.* at 551. It is clear that "[r]epeated rulings against a litigant, no matter how erroneous and how vigorously and consistently expressed, are not a basis for disqualification of a judge on the grounds of bias and prejudice." *See Maret v. United States*, 332 F. Supp. 324, 326 (E.D. Mo. 1971). Plaintiff's contention that any judge who rules against him exhibits pervasive bias and prejudice is simply incorrect, and his theory that Judge Weigle is treating him differently than other *pro se* inmates making similar claims is undercut by Plaintiff's failure to differentiate between the procedural postures and the overall circumstances of the cases and litigants he is comparing.

28 U.S.C. § 455(b)(1) requires disqualification where the judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]" "Recusal under this subsection is mandatory, because 'the potential for conflicts of interest are readily apparent.'" *Patti*, 337 F.3d at 1321 (quoting *Murray v. Scott*, 253 F.3d 1308, 1312 (11th Cir. 2001)). Again, Plaintiff has failed to establish any personal or pervasive bias on the part of Judge Weigle, and Plaintiff also fails to identify any specific "disputed evidentiary facts" of which the Court might have knowledge. Any knowledge gained through the course of a judicial proceeding is not a "disputed evidentiary fact" that requires recusal. *United States v. Bailey*, 175 F.3d 966, 969 (11th Cir. 1999) (per curiam). Instead, knowledge of disputed evidentiary facts must be gained through an extrajudicial source to warrant recusal. *See id.* Plaintiff has not asserted that such knowledge exists here.

In sum, Plaintiff's contentions that Judge Weigle has not ruled in his favor are not alone sufficient to merit recusal, and Plaintiff has also failed to show that Judge Weigle harbors the type of pervasive bias or prejudice against Plaintiff that would otherwise require recusal. Plaintiff's motion for recusal (ECF No. 28) is therefore **DENIED.**

## II. Motions for Preliminary Injunction

Plaintiff has also filed an "emergency" motion for a preliminary injunction or temporary restraining order "enjoining Defendants from physically forcibly shaving Plaintiff pending final disposition of this case." Mot. Prelim. Inj. 1, ECF No. 27. Plaintiff additionally filed a motion for preliminary injunction or temporary restraining order requiring Defendants to provide Plaintiff with adequate access to either a lockdown

satellite law library or the general population library, or to "otherwise make arrangements to provide Plaintiff adequate law library access." Mot. Prelim. Inj. 1, ECF No. 29.[1]

A temporary restraining order ("TRO") or preliminary injunction is a drastic remedy used primarily to preserve the status quo rather than grant most or all of the substantive relief sought in the complaint. *See, e.g., Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir. 1983); *Fernandez-Roque v. Smith*, 671 F.2d 426, 429 (11th Cir. 1982).[2] Factors a movant must show to be entitled to a TRO include: "(1) a substantial likelihood of ultimate success on the merits; (2) the TRO is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the TRO would inflict on the non-movant; and (4) the TRO would serve the public interest." *Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir. 1995) (per curiam).

Since Plaintiff filed his motions for injunctive relief, he has been transferred from the Macon State Prison to the Valdosta State Prison. "The general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief." *See, e.g., McKinnon v. Talladega Cnty.*, 745 F.2d 1360, 1363 (11th Cir. 1984)). This general rule may not apply, however, where a reason to except the claims exists. *See, e.g., Smith v. Artus*, 522 F. App'x 82, 84 (2d Cir. 2013) (unpublished opinion) (finding that transferred prisoner's claims for injunctive relief were not moot where defendants

---

[1]This motion was also filed in two of Plaintiff's other pending cases.

[2]The standard for obtaining a TRO is the same as the standard for obtaining a preliminary injunction. *See Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034-35 (11th Cir. 2001) (per curiam); *Windsor v. United States*, 379 F. App'x 912, 916-17 (11th Cir. 2010) (per curiam).

5

acknowledged claims were based on a statewide policy). With respect to Plaintiff's motion regarding law library access, the Court finds Plaintiff has failed to allege facts sufficient to show that an exception to the general rule should apply. Plaintiff has not alleged any facts suggesting that his alleged lack of law library access is the result of a statewide policy or otherwise exists at his new prison. Plaintiff's motion is based on his contention that lockdown prisoners are not afforded sufficient law library access. It is unclear whether Plaintiff is even on "lockdown" at VSP or whether he is now housed in general population. The Court therefore cannot determine whether Plaintiff actually requires a "lockdown satellite law library" or the other accommodations he requests. *See* Mot. Prelim. Inj. 1, ECF No. 29. Furthermore, Plaintiff acknowledges in his motion that some Georgia state prisons do maintain satellite law libraries in their lockdown units. *Id.* at 2. It therefore appears that no uniform statewide policy exists, and Plaintiff has failed to file any supplemental briefing or pleadings in this case indicating that his access to legal materials at VSP is limited. Plaintiff's motion for injunctive relief regarding law library access (ECF No. 29) is therefore **DENIED as moot.**

As to Plaintiff's motion seeking an order enjoining Defendants from forcibly shaving Plaintiff, the Court finds that at this juncture the facts have not been sufficiently developed to conclude that there is a substantial likelihood that Plaintiff will ultimately prevail on the merits. This Court has previously observed that Plaintiff can avoid being forcibly shaven by simply complying with the GDC's grooming policy. *See Daker v. Dozier*, No. 5:17-CV-0025-CAR, 2017 WL 3037420, at *6 (M.D. Ga. July 18, 2017) (noting that Plaintiff's "allegations . . . suggest that it was Plaintiff's repeated failure to

6

follow instructions, not the GDC's policies, that created the dangerous situation that led to his injuries"). Plaintiff does not allege that the GDC's current grooming policy has been found unconstitutional or otherwise unlawful, and the Eleventh Circuit has indicated that some use of force is permissible to enforce prison regulations. *Muhammad v. Sapp*, 494 F. App'x 953, 957 (11th Cir. 2012) (per curiam) (holding that prison official "was authorized to use force to enforce the prison's shaving policy"); *cf. also, e.g., Robinson v. Lambert*, No. 18-11033, 2018 WL 5255238, at *3 (11th Cir. Oct. 22, 2018) (per curiam) (holding that officer "was warranted in using force given [plaintiff's] repeated refusal to obey commands to attend his first appearance"). While Defendants clearly are not permitted to use *excessive* force to enforce their regulations, this Court cannot issue an injunction that simply requires Defendants to follow the law. *See Elend v. Basham*, 471 F.3d 1199, 1209 (11th Cir. 2006) ("It is well-established in this circuit that an injunction demanding that a party do nothing more specific than 'obey the law' is impermissible."). Furthermore, the Defendants have not been served or had a meaningful opportunity to respond to Plaintiff's allegations. *See* Fed. R. Civ. P. 65. Defendants should be afforded an opportunity to respond to Plaintiff's allegations, and any claims for injunctive relief can be addressed as this case proceeds. For these reasons, Plaintiff's motion for an emergency injunction (ECF No. 27) is **DENIED.**

### III. Leave to Proceed *in Forma Pauperis*

On May 6, 2014, this Court denied leave to proceed *in forma pauperis* on grounds that Plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) and had not demonstrated that he was in imminent danger of serious physical injury. Order, May

7

6, 2014, ECF No. 5. Based on its intervening decision in *Daker v. Commissioner, Georgia Department of Corrections*, 820 F.3d 1278 (11th Cir. 2016), the Eleventh Circuit concluded that the Court miscounted Plaintiff's strikes and therefore erred in denying Plaintiff's *in forma pauperis* motion and dismissing his Complaint. Order 4, Oct. 9, 2018, ECF No. 24. Thus, while the question of whether Plaintiff had three strikes at the time he filed his Complaint is now settled, this Court has not yet had the opportunity to address whether Plaintiff is actually indigent and therefore entitled to proceed without prepaying the Court's filing fees. *See* 28 U.S.C. § 1915(a)(1). This is particularly important in light of the facts that (1) Plaintiff has recently been able to pay hundreds of dollars in filing fees in various courts; (2) Plaintiff's name is listed as an account holder on at least one of the checks used to pay those fees; and (3) other courts have found that Plaintiff has not been truthful concerning his allegations of poverty. *See, e.g., Nolley v. McLaughlin*, Case No. 5:15-cv-00149-TES-CHW (M.D. Ga. Apr. 27, 2015) ($505.00 appeal fee paid on Feb. 7, 2019 regarding Plaintiff's motion to intervene); *Daker v. Owens*, Case No. 5:12-cv-00459-CAR-MSH (M.D. Ga. Nov. 20, 2012) ($4.00 appeal fee paid on Jan. 4, 2019); *Daker v. USA,* Appeal No. 18-11383 (11th Cir. Apr. 3, 2018) ($505.00 appeal fee paid on November 30, 2018); *Daker v. McLaughlin*, Case No. 5:18-cv-00171-MTT-CHW (M.D. Ga. May 17, 2018) ($5.00 filing fee paid May 17, 2018); *Smith v. Owens*, Case No. 5:12-cv-00026-WLS-CHW (M.D. Ga. Jan. 24, 2012) ($505.00 appeal fee paid on Sept. 4, 2018 with check listing Plaintiff as account holder, *see* ECF No. 215); *Daker v. Warren*, Appeal No. 16-17459 (11th Cir. Dec. 8, 2016) ($505.00 appeal fee paid May 22, 2018); *see also* Order, *Daker v. Warren*, ECF No. 38 in Case No. 1:12-CV-2605-RWS (N.D. Ga. June 5, 2014)

8

("Daker has repeatedly abused the judicial process by filing IFP affidavits that conceal and/or misstate his true assets and income."); Order, *Daker v. Dawes*, ECF No. 3 in Case No. 1:12-CV-119-RWS (N.D. Ga. Feb. 2, 2012) (magistrate judge finding that earlier-filed IFP affidavit had concealed Plaintiff's true, substantial net worth).

Plaintiff is therefore **ORDERED** to submit a new motion for leave to proceed *in forma pauperis* in this action within **TWENTY-ONE (21) DAYS** of the date of this Order. The Clerk is **DIRECTED** to mail Plaintiff a copy of the appropriate forms.

### IV. Order to Recast

The Federal Rules of Civil Procedure require (1) that a complaint set out "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), (2) that "[a] party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances," and (3) that "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count[,]" Fed. R. Civ. P. 10(b). The Court has the "inherent authority to control its docket and ensure the prompt resolution of lawsuits, which in some circumstances includes the power to dismiss a complaint for failure to comply with Rule 8(a)(2) and Rule 10(b)." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). A complaint that violates Rule 8(a)(2) or Rule 10(b)—and might therefore be subject to dismissal on that ground—is often called "a shotgun pleading." *Id.* The Eleventh Circuit has identified several different species of "shotgun pleadings," but their "unifying characteristic" is their failure "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *See id.* at 1321-22.

9

Plaintiff's Complaint primarily consists of two distinct sections: a "statement of facts" and a "statement of claims." *See* Compl. 10-34, 35-37, ECF No. 1. The "statement of claims" portion of Plaintiff's Complaint asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1323. It is also "replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the [30] defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of." *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (per curiam). Furthermore, Plaintiff does not even mention nearly a third of the named Defendants in his statement of facts, including Defendants Fields, Fountain, Lewis, Eutsey, Caldwell, Malone, Ayeni, and Medlock. Plaintiff's Complaint is therefore a "shotgun complaint" as defined by the Eleventh Circuit. *See, e.g., Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1359 n.9 (11th Cir. 1997) (noting that the complaint was "an all-too-typical shotgun pleading" where the "reader of the complaint must speculate as to which factual allegations pertain to which count"); *see also Douglas v. Yates*, 535 F.3d 1316, 1321-22 (11th Cir. 2008) (dismissal of defendants appropriate where plaintiff failed to allege facts associating defendants with a particular constitutional violation). The proper remedy for a "shotgun" pleading is generally to permit the party to amend his complaint to conform to the Federal Rules of Civil Procedure or to dismiss the pleading without prejudice. *See Washington v. Dep't of Children & Families*, 256 F. App'x 326, 328 (11th Cir. 2007) (per curiam) (vacating and remanding district court's dismissal of complaint with prejudice with

instructions to order plaintiff to either "comply with the rules or to dismiss the complaint without prejudice"). The Court will give Plaintiff an opportunity to amend his Complaint to address this deficiency.

Plaintiff's amended complaint must contain a caption that clearly identifies, by name, each individual that Plaintiff has a claim against and wishes to include as a defendant in the present lawsuit. Plaintiff is to name only the individuals associated with the claim or related claims that he is pursuing in this action. Plaintiff must then list each defendant again in the body of his complaint and tell the Court exactly how that individual violated his constitutional rights. Plaintiff should state his claims as simply as possible and need not attempt to include legal citations or legalese. If, in his amended complaint, Plaintiff fails to link a named defendant to a claim, the claim will be dismissed. Likewise, if Plaintiff makes no allegations in the body of his complaint against a named defendant, that defendant will be dismissed.

Plaintiff's amended complaint should be limited to the claims raised in his initial Complaint in this case. In addition, Plaintiff's amended complaint should not contain any claims that have been fully and finally resolved against him as a sanction in *Daker v. Owens,* No. 5:12-cv-00459-CAR-MSH (M.D. Ga. Nov. 20, 2012) ("*Daker I*"). *See* Order 17, ECF No. 388 in *Daker I* (M.D. Ga. May 8, 2017) (dismissing amended complaint as a sanction under Federal Rule of Civil Procedure 41(b) due to Plaintiff's "blatant disregard for the Court's Orders, procedures, and resources"). Plaintiff's amended complaint also should not contain any claims that are presently pending in any of Plaintiff's current actions. **The recast complaint will supersede (take the place of) the original complaint**

**filed in this case (ECF No. 1).** The Clerk is **DIRECTED** to forward a copy of the Court's standard § 1983 form marked with the case number of the above-captioned action to the Plaintiff. Once Plaintiff has amended his Complaint in accordance with the Court's instructions, the Court will conduct preliminary screening pursuant to 28 U.S.C. § 1915A and/or any other appropriate proceedings within a reasonable time. Plaintiff's motions to expedite the § 1915A screening (ECF Nos. 25, 31) are therefore **DENIED as moot.**

V.    Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiff's motion for recusal of Magistrate Judge Weigle (ECF No. 28); **DENIES** Plaintiff's motions for preliminary injunctions or temporary restraining orders (ECF Nos. 27, 29); and **DENIES** Plaintiff's motions to expedite the 28 U.S.C. § 1915A and other proceedings (ECF Nos. 25, 31). Plaintiff is **ORDERED** to (1) either pay the Court's $400.00 filing fee or submit a motion for leave to proceed *in forma pauperis* explaining his present inability to pay such fee and (2) amend his Complaint as directed above within **TWENTY-ONE (21) DAYS** of the date of this Order. Plaintiff is also instructed to notify the Court in writing of any change in his mailing address. **The failure to fully and timely comply with this Order will result in the dismissal of his Complaint.**

**SO ORDERED**, this 22nd day of February, 2019.

S/Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT
