# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| WASEEM DAKER, | ) |
| | ) |
|     Plaintiff, | ) |
| VS. | ) |
| | )   CASE NO.: 5:14-CV-138-MTT-CHW |
| PATRICK H. HEAD, *et al.*, | ) |
| | ) |
|     Defendants. | ) |
| _____ | ) |

## ORDER

Presently pending before the Court is the April 22, 2019 Recommendation of the United States Magistrate Judge to dismiss *pro se* Plaintiff Waseem Daker's Complaint with prejudice because Plaintiff's allegations of poverty are untrue (Doc. 40). Plaintiff has timely filed "partial objections" to the Recommendation (Doc. 41). Pursuant to 28 U.S.C. § 636(b)(1), the Court has thoroughly considered Plaintiff's Objections and performed a *de novo* review of the portions of the Recommendation to which Plaintiff objects. Having done so, and for the reasons explained below, the Court finds Plaintiff's Objections to be without merit. Accordingly, the Magistrate Judge's Recommendation (Doc. 40) is hereby **ADOPTED** and made the Order of the Court**.** Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**. The Court also **DENIES** Plaintiff's request for an evidentiary hearing on his Objections (Doc. 43) and **DENIES** Plaintiff's remaining pending motions (Docs. 36; 38; 39; 42; 44; 45; 46) as moot.

    **I.**    **Plaintiff's Allegations of Poverty Remain Untrue**

The United States Magistrate Judge issued an Order and Recommendation in this case recommending that Plaintiff's Complaint in this case be dismissed pursuant to 28

U.S.C. § 1915(e)(2)(A) because the allegations in Plaintiff's affidavit of poverty were untrue. The Magistrate Judge further recommended that the dismissal be with prejudice given Plaintiff's history of attempting to mislead courts concerning his indigent status and his continued abuse of the judicial system. *See, e.g.*, Doc. 40 at 15-16. In his Objections, Plaintiff offers a number of excuses for his misconduct. Even if the Court generously accepts as true Plaintiff's factual assertions, however, Plaintiff's affidavit of poverty still contains at least two glaring omissions that he simply cannot explain.

First, the Magistrate Judge noted that Plaintiff's filings in other jurisdictions revealed that Plaintiff at one time had an annuity contract with an apparent, accessible cash value of more than $10,000.00 that was not disclosed on Plaintiff's IFP application. Doc. 40 at 9. The IFP application in this case required Plaintiff to disclose whether he had "received within the past TWELVE (12) MONTHS any money from any of the following sources[.]" Doc. 35 at 1 (emphases in original). The form lists a number of sources and includes a catch-all for "Any other sources." *Id.* The IFP form also required Plaintiff to "describe each source of money received and state the amount received from each." *Id.* (emphases in original). Plaintiff signed his motion to proceed *in forma pauperis* in this case on February 27, 2019. *Id.* at 3. Thus, Plaintiff was required to disclose his receipt of any funds after February 27, 2018.

Plaintiff checked "Yes" next to "Any other sources" and referred the Court to an "attached sheet." *Id.* at 1. On this "attached sheet" Plaintiff stated he sold his house on August 27, 2018, and "most of the proceeds from that sale were used to pay off the mortgage and other debts." *Id.* at 3. Plaintiff then stated, "After paying off some other

2

debts and expenses, I have about $36,000 left over. $6000 in a checking account. $30,000 in a savings account." *Id.*

Plaintiff acknowledges in his objection that his annuity contract was reinstated on March 22, 2018 and that the funds from that account were used to pay "mortgage payments on Plaintiff's mortgage to prevent foreclosure on Plaintiff's house while it was listed for sale." *See* Doc. 41 at 33. When his home sold, Plaintiff also admits that the remaining funds from the annuity contract "were converted into his bank accounts." *Id.* Although Plaintiff disclosed the fact that he owned a house and that the proceeds from the sale of his house ended up in his also-disclosed checking and savings accounts, Plaintiff never mentioned the annuity contract or that he used the funds from this contract to prevent foreclosure on his home, which has proven to be quite a valuable asset. Plaintiff also neglected to inform the Court that the source of at least some of the funds in his checking and savings accounts was this annuity contract rather than the "proceeds" of the sale of his home, as he states in his motion to proceed IFP. *See* Doc. 35 at 3; *see also id.* at 1 (requiring Plaintiff to "describe each <u>source</u> of money received" during the previous twelve months).

Plaintiff's omission of any mention of the annuity contract and the proceeds therefrom was plainly calculated to conceal the contract's existence as a potential source of funds from which Plaintiff could have paid the required filing fees. Even if the Magistrate Judge "erroneously assume[d] that Plaintiff still has that contract when in fact he does not," Doc. 41 at 33, Plaintiff was still required to disclose that he received the funds from the contract either by having them deposited directly into his checking or savings account or by using those funds to preserve the only significant asset he admitted

3

to owning.  *See, e.g.*, *Wonsch v. Smart Commc'ns, US, Inc.*, Case No. CIV-17-342-F, 2017 WL 2192097, at *2 (W.D. Okla. May 10, 2017) (noting that prisoner's omission of source of funds "is significant" given the possibility "that a source of money could satisfy Plaintiff's filing fee, fully or in part" and "[w]ithout the requisite disclosure, the court cannot make that determination").  The Magistrate Judge did not err in determining that Plaintiff's failure to disclose the annuity contract is one reason that his allegations of poverty were untrue.

The Magistrate Judge also noted that Plaintiff failed "to explain in his IFP motion how he was able to pay filing fees *before* he ever sold his home in August of 2018."  Doc. 40 at 10.  The Magistrate Judge found that Plaintiff's ability to pay hundreds of dollars in filing fees in May of 2018 "demonstrates that he had some source of income even prior to the sale of his home, but he fails to reveal this source to the Court."  *Id.* at 11.

Plaintiff alleges that the $510.00 in filing fees identified by the Magistrate Judge as having been paid prior to the sale of Plaintiff's house "were paid while Plaintiff's house was actively listed for sale and were also paid *as a loan* from a friend, Loretta Spencer Blatz[,] to be repaid upon the sale of the house."  Doc. 41 at 39 (emphasis in original). Plaintiff also explains that "those fees were paid *directly from Ms. Blatz to the Court*, and said funds never passed through Plaintiff's possession or control; thus, Plaintiff never 'received' those funds."  *Id.* (emphasis in original).

To the extent Ms. Blatz loaned Plaintiff money to be repaid from the proceeds of his home, Plaintiff should have disclosed this loan in response to question 4(b), which required Plaintiff to "list any mortgages, liens, or loans against the property <u>and</u> state the amount you owe."  Doc. 35 at 2.  Alternatively, Plaintiff could have listed Ms. Blatz's

4

assistance as money received from "Any other sources," in response to the form's requirement to disclose "any money" received in the twelve months prior to filing the IFP motion. *See Foryoh v. Banas*, 231 F. App'x 484, 484 (7th Cir. 2007) (holding that plaintiff should have disclosed financial support received from his mother in the form of "meals, car, college tuition, textbooks, and housing" in response to question asking whether he received "more than $200 from any source in the preceding year," even if such support was characterized as a "loan"). What Plaintiff could *not* do was attempt to conceal Ms. Blatz's assistance from the Court altogether.

Plaintiff's position that he never "received" funds from either the annuity contract or the "loans" from Ms. Blatz is both disingenuous and meritless. While Plaintiff may not have had physical possession of the funds, he clearly directed Ms. Blatz to use them to pay his filing fees and mortgage payments. It is also clear that Plaintiff made the strategic decision to funnel this money through Ms. Blatz to prevent Defendants from using those funds to pay off debts they contend Plaintiff accrued in prison. Doc. 41 at 13-14 n.4 (admitting that "he cannot place funds in his prison account" because he is disputing his debt balance therein and "Defendants will seize those funds and apply them to debts which Plaintiff is disputing"). Plaintiff thus maintained at least some control over those funds and should have reported their receipt on his motion to proceed *in forma pauperis*. *See, e.g.*, *Norfleet v. Benton*, 09-CV-347-JPG, 2013 WL 1189688, at *1 (S.D. Ill. Mar. 22, 2013), *aff'd,* 555 Fed. Appx. 631 (7th Cir. 2014) (finding prisoner's "argument that he never had physical possession of the funds unpersuasive" where prisoner's "mother obviously distributed the funds at [prisoner's] request"; thus, prisoner "had at least some control of those funds and a duty to report the receipt of those funds on his motion for

leave to appeal *in forma pauperis*"); *Trainauskas v. Fralicker*, 17-CV-00816-SMY, 2018 WL 656600, at *2 (S.D. Ill. Feb. 1, 2018) (finding that even though prisoner chose to route funds to another person and relinquish physical control over them, prisoner "certainly did not relinquish *all* control over the funds, given that the entire amount was allegedly used to pay his attorney"). It is also worth noting that Plaintiff revoked his brother's power of attorney "because his brother was not acting in his best interest or respecting Plaintiff's wishes," *see* Doc. 41 at 54; Ms. Blatz still has power of attorney, presumably because she is following Plaintiff's instructions with respect to the disposition of his assets.

Plaintiff also alleges that he "has not always had access to his financial information" and that any "perceived discrepancies" in his IFP affidavits "are attributable to the fact that between 2010 and 2017, Plaintiff had given power of attorney to his brother, Wesam Daker," and his brother "often concealed aspects of Plaintiff's financial situation from Plaintiff or lied to Plaintiff." Doc. 41 at 50. Plaintiff further contends that his brother "sold or disposed of Plaintiff's assets or attempted to do so, without Plaintiff's knowledge or consent." *Id.* This excuse also lacks merit, at least with respect to the time period at issue in the IFP motion. Plaintiff's Objections suggest that he gave Ms. Blatz power of attorney when he put his house on the market in January of 2018. *See, e.g.*, Doc. 41 at 53 n.8, 54. Given the amount of communication involved in Ms. Blatz's efforts to pay Plaintiff's filing fees, assist with his cases, coordinate the selling of his home, manage at least one joint financial account with Plaintiff, and locate the whereabouts of Plaintiff's missing property, among other things, it is hard to believe that Plaintiff was truly unaware of his financial circumstances during the twelve months prior to the filing of the motion to proceed *in forma pauperis* in this case in late February 2019. Furthermore,

6

Plaintiff plainly knew about his annuity contract and the filing fees paid on his behalf by Ms. Blatz. Plaintiff's failure to disclose those particular assets cannot be blamed on his brother's alleged malfeasance.

As noted in the Order and Recommendation, the Eleventh Circuit has upheld the dismissal of cases for even minor misstatements where the prisoner has a history of misleading the courts regarding his financial status. *See Dawson v. Lennon*, 797 F.2d 934, 935 (11th Cir. 1986) (noting that court had previously "upheld dismissal of a claim under 42 U.S.C. § 1983 of a prisoner who professed to have no money in his prison accounts, which in fact contained thirty cents, and who had a history of manipulating his accounts to support claims of indigency"). The failure of Plaintiff to disclose receipt of thousands of dollars is neither minor nor immaterial, and his conduct warrants dismissal.[1]

The Magistrate Judge recommended dismissing Plaintiff's Complaint with prejudice. Given the numerous inconsistencies and findings of other courts cited in the Magistrate's Order and Recommendation, Plaintiff's established history of intentionally misleading the courts and engaging in vexatious, harassing, and bad faith litigation cannot seriously be contested. Moreover, Plaintiff's calculated efforts to conceal sources of funds from which he could have paid the filing fee in this case, had he chosen to do, was done in bad faith. Dismissal with prejudice is therefore proper in this case. *See, e.g.*, *Dawson*, 797 F.2d at 935 (holding that "while dismissal of an action with prejudice is a sanction of last resort, it is appropriate in cases of bad faith"); *see also id.* at 936 (holding

---

[1] Of note, in his objections, Plaintiff also fails to directly address the Magistrate Judge's findings that "Plaintiff repeatedly claimed he was indigent without mentioning his sizeable bank account balances" in other documents filed *after* the sale of his home. Doc. 40 at 12. Plaintiff does, however, request copies of various documents cited in the Order and Recommendation in his concurrently-filed motions for access to copies and case authorities so that he can address any alleged discrepancies therein (Docs. 44; 45; 46). Thus, while it appears that Plaintiff likely misled this Court (and others) with respect to these allegations, the Court need not rely on these misleading statements for purposes of this Order.

7

that a plaintiff's "clear pattern of attempts to deceive the courts on his financial status in this and other cases justifies the district court's imposition of the severe sanction of dismissal with prejudice").

## II. Plaintiff Is Not Entitled to an Evidentiary Hearing

Plaintiff has also filed a motion requesting an evidentiary hearing on the issue of his indigent status (Doc. 43). Eleventh Circuit "precedents make clear that a district court must provide the prisoner notice and an opportunity to be heard before dismissing a case *with prejudice*," pursuant to 28 U.S.C. § 1915(e)(2)(A) or otherwise. *Daker v. Commissioner*, 694 F. App'x 765, 766 (11th Cir. 2017). As the Magistrate Judge noted, the ability to object to the recommendation of dismissal provides Plaintiff with the requisite notice and opportunity. *See, e.g.*, *Schmidt v. Navarro*, 576 F. App'x 897, 899 (11th Cir. 2014) (per curiam); *Vanderberg v. Donaldson*, 259 F.3d 1321, 1324 (11th Cir. 2001) (holding that plaintiff was not denied due process where "district judge reviewed the magistrate judge's report and recommendation de novo; and Plaintiff was given an opportunity to object to the magistrate judge's report before the district court entered its final order" dismissing case). The fact that Plaintiff filed a 60-plus page "partial" objection demonstrates that he has already had sufficient opportunity to respond to the possibility of dismissal in this case. Moreover, Plaintiff has pointed the Court to no authority suggesting that an evidentiary hearing is required in this case, and as noted above, even when construing Plaintiff's factual allegations as true, it is clear that Plaintiff failed to disclose at least two assets he was required to disclose. *See, e.g.*, *Holly v. Wexford Health Servs., Inc.*, 339 F. App'x 633, 636-37 (7th Cir. 2009) (holding that plaintiff had "no right to an evidentiary hearing" on whether dismissal of complaint was appropriate

8

pursuant to 28 U.S.C. § 1915(e)(2)(A) where plaintiff "had the opportunity in his brief to the district court to explain the discrepancies" in fee petitions but failed to "identify any material factual dispute warranting an evidentiary hearing"). Plaintiff's motion for an evidentiary hearing (Doc. 43) is therefore **DENIED.**

**CONCLUSION**

For the foregoing reasons, the Recommendation (Doc. 40) is hereby **ADOPTED** and made the Order of the Court, and Plaintiff's Complaint is **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(A). Plaintiff's motion for an evidentiary hearing regarding his indigent status (Doc. 43) is **DENIED,** and Plaintiff's remaining pending motions (Docs. 36; 38; 39; 42; 44; 45; 46) are **DENIED as moot.**

**SO ORDERED,** this 25th day of July, 2019.

S/ Marc T. Treadwell  
MARC T. TREADWELL, JUDGE  
UNITED STATES DISTRICT COURT